# In the United States Court of Federal Claims

No. 21-2307T
Filed: April 13, 2022
NOT FOR PUBLICATION

---

**INEZ GRIFFIN,** *pro se*,

                *Plaintiff*,

**v.**

**UNITED STATES,**

                *Defendant*.

---

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

The plaintiff, Inez Griffin, acting *pro se*, filed this action against the United States on December 15, 2021. The plaintiff claims that the United States, acting through the Internal Revenue Service ("IRS"), unlawfully withheld her tax refund and violated a number of constitutional and statutory provisions.[1] The defendant has moved to dismiss the plaintiff's complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief can be granted under RCFC 12(b)(6).

The Court finds that it lacks jurisdiction over the plaintiff's claim for a tax refund because the plaintiff has not alleged that she filed a claim for a tax refund with the IRS. Even if the Court had jurisdiction over that claim, the Court would dismiss it under RCFC 12(b)(6). The Court also dismisses the plaintiff's claim arising under the takings clause of the fifth amendment of the U.S. Constitution under RCFC 12(b)(6). The plaintiff's other claims fall outside of the Court's limited subject-matter jurisdiction. Accordingly, the Court grants the defendant's motion to dismiss. The plaintiff's claims for a tax refund are dismissed with prejudice pursuant to RCFC 12(b)(1) and 12(b)(6), the plaintiff's takings claim is dismissed with prejudice pursuant to RCFC 12(b)(6), and the plaintiff's other constitutional and statutory claims are dismissed without prejudice pursuant to RCFC 12(b)(1).

---

[1] The plaintiff filed her complaint without either paying the filing fee or moving for leave to proceed *in forma pauperis* and was directed either to pay the filing fee or to seek leave to proceed *in forma pauperis* within 30 days. The plaintiff chose the latter, and her motion for leave to proceed *in forma pauperis* was granted.

## I.      BACKGROUND

### A.      The Plaintiff's Claims[2]

The plaintiff is a citizen of the United States.  (Compl. at 3, 5.)  She claims that she is entitled to economic stimulus payments and child tax credits for her son.  (*Id.* at 3-4.)  She alleges that she "do[es] not owe the IRS any taxes and ONLY filed as a non filer to receive the Economic Stimulus Payment that was and is due and owing to [her] for [her] minor child."  (*Id.* at 8 (capitalization and punctuation in original).)  She "receive[s] federal money and [has] filed taxes in the past."  (*Id.*)  Her complaint alleges that the IRS engaged in "actions of retaliation and corruption" by "repeated mailings of 60 day extensions letters."  (*Id.*)  The plaintiff has "no outstanding debt, credit cards or [mortgage] and as a result the credit agency they use cannot identify [her]."  (*Id.*)  The plaintiff visited the IRS office in Milwaukee, Wisconsin, last year and allegedly verified her identity.  (*Id.*)

The plaintiff alleges that she "has been suffering irreparable economic injury due to the fact that the defendants are unlawfully withholding her money," and that the defendant is "trying to force the Plaintiff to participate in the biometric involuntary program of Kantara Initiative, under the guise of digital identification."  (*Id.* at 4.)  The plaintiff claims that the defendant's actions violate the law and are causing her emotional distress and economic injury.  (*Id.*)

The plaintiff also claims that the United States has violated the first, fourth, fifth, sixth, eighth, ninth, and fourteenth amendments to the U.S. Constitution.  (*Id.* at 3, 12.)  Additionally, the plaintiff alleges that the defendant has violated numerous statutes, including the Civil Rights Act (42 U.S.C. §§ 1981, 1985, 1986, 1988), the Federal Tort Claims Act (28 U.S.C. § 2674), and provisions of Title 18 of the U.S. Code (18 U.S.C. §§ 241, 242).  (*Id.* at 7-8, 12-14.)

The plaintiff seeks injunctive relief, declaratory relief, and monetary damages of $250,000.  (*Id.* at 14-15, 18.)  She also requests a three-judge panel and a jury trial.  (*Id.* at 1.)

### B.      Procedural History

After the plaintiff's motion to proceed *in forma pauperis* was granted, the defendant filed its motion to dismiss under RCFC 12(b)(1) and 12(b)(6).  The plaintiff responded to the defendant's motion.  The defendant did not file a reply brief.

In her opposition to the defendant's motion to dismiss, the plaintiff asserted that she has "repeatedly filed request for administrative review, audit request, personal complaints to the [IRS C]ommissioner personally via e-mail," and that she has not received a response to any of these from the IRS.  (Pl.'s Resp. at 2.)  The plaintiff argues that the money allegedly due to her is not a tax refund and contests the defendant's characterization of her claim as such.  Instead, she

---

[2] In considering the defendant's motion to dismiss, the facts as alleged in the plaintiff's complaint are assumed to be true.  This summary of the facts does not constitute findings of fact but is simply a recitation of the plaintiff's allegations.

claims the money is owed to her under laws enacted in 2020 and 2021 to respond to the financial distress attributable to the coronavirus pandemic.

### C.     Economic Stimulus and Child Tax Credits

In 2020 and 2021, in response to the pandemic, Congress provided three advance refunds of tax credits, colloquially referred to as "economic stimulus payments."

First, on March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 § 2201(a), 134 Stat. 281, 335-37 (2020) (codified as amended at 26 U.S.C. § 6428).  The CARES Act provided that eligible individuals would receive an "advance refund" of the applicable tax credit of up to $1,200 plus $500 for each qualifying child.  26 U.S.C. §§ 6428(a), 6428(f).

Second, on December 20, 2020, Congress enacted the COVID-related Tax Relief Act of 2020, Pub. L. No. 116-260, § 272(a), 134 Stat. 1182, 1965-71 (codified as amended at 26 U.S.C. § 6428A).  Eligible individuals received an additional "advance refund" of the applicable tax credit of up to $600 per individual plus $600 for each qualifying child.  26 U.S.C. §§ 6428A(a), 6428A(f).

Finally, on March 11, 2021, Congress enacted the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, § 9601(a), 135 Stat. 4, 138-42 (codified as amended at 26 U.S.C. § 6428B).  Under the ARPA, eligible individuals received an "advance refund" of the applicable tax credit of up to $1,400 plus $1,400 for each qualifying dependent.  26 U.S.C. §§ 6428B(b), 6428B(f).

Under the structure of these advance refund tax credits, the IRS estimated the amount of the recovery rebate due to each taxpayer based on past filings and prepaid that amount.  *See id.* §§ 6428(f)(2), 6428A(f)(2), 6428B(g)(2).  When a taxpayer filed a return for 2020 or 2021, the IRS determined the correct amount of the tax credit due to the taxpayer and paid any unpaid amount of the credit still owed to the taxpayer.  *See id.* §§ 6428(e)(1), 6428A(e)(1), 6428B(f)(1). Taxpayers who did not receive the stimulus payments despite being eligible could receive the tax credits due to them by filing a tax return.

Additionally, under the ARPA, Congress expanded the tax credit for 2021 for each minor child in three ways: the credit was made fully refundable; the maximum age for qualifying children was increased from 17 to 18; and the maximum amount of the credit was increased to $3,600 for each qualifying child.  *See* Pub. L. No. 117-2, § 9611, 135 Stat. at 144-45 (codified as amended at 26 U.S.C. § 24(i)).

Congress also provided in the ARPA that eligible individuals could receive one-half of the estimated amount of the 2021 child tax credit in advance.  *Id.* § 9611(b)(1), 135 Stat. at 145-48 (codified as amended at 26 U.S.C. § 7527A).  This advance-refund structure resembles the structure of the economic stimulus payments: the IRS calculates who is eligible for the credit and pays half of the credit in advance, but taxpayers will be entitled to the full credit due to them upon the filing of a tax return for the year 2021.  *See* 26 U.S.C. § 24(j).

The IRS created online portals for individuals who did not file tax returns in the past to provide the necessary information so the IRS could issue them advance refunds for their economic stimulus payments and child tax credits.[3]

## II.   STANDARDS OF REVIEW

### A.   Subject-Matter Jurisdiction

To determine subject-matter jurisdiction under RCFC 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the government does not controvert are accepted as true.  *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).  The court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts.  *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).  Courts may review evidence outside the pleadings.  *Id.*

The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence.  *Trusted Integration, Inc.*, 659 F.3d at 1163.  If a court finds that it lacks subject-matter jurisdiction over the plaintiff's claim, RCFC 12(h)(3) requires dismissal of the claim.

### B.   Failure to State a Claim

Under RCFC 12(b)(6), dismissal "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  The court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party, *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).  To avoid dismissal under RCFC 12(b)(6), a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[3] The portal for economic stimulus payments is no longer available.  The defendant has cited a permalink showing that as of December 29, 2021, the portal was still available for taxpayers to use to receive their third stimulus payments: https://perma.cc/8R5P-XD8Z.

The portal for the child tax credit is still available: https://www.irs.gov/credits-deductions/advance-child-tax-credit-payments-in-2021 [https://perma.cc/JL84-WXFL].

C.     *Pro se* **Litigation**

The plaintiff is proceeding *pro se*.  As a result, her pleadings are entitled to a more liberal construction than the Court would give to pleadings prepared by a lawyer.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Giving a *pro se* litigant's pleadings a liberal interpretation and construction does not divest the *pro se* plaintiff of the responsibility of having to demonstrate that she has satisfied the jurisdictional requirements that limit the types of claims the Court of Federal Claims may entertain.  *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

In construing a *pro se* litigant's pleadings liberally, the court does not become an advocate for that litigant.  Rather, the court ensures that the *pro se* litigant's pleadings are construed in a manner that gives the litigant every opportunity to make out a claim for relief.

## III.   DISCUSSION

The jurisdiction of the Court of Federal Claims "depends wholly upon the extent to which the United States has waived its sovereign immunity to suit . . . ."  *United States v. King*, 395 U.S. 1, 4 (1969).  The waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."  *Id.*

The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Supreme Court has held that the "Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, the substantive right must come from a separate, money-mandating source of substantive law.  *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

For each of her claims, including her tax-refund claim, her constitutional claims, and her other statutory claims, the plaintiff must identify a substantive, money-mandating source of law that waives sovereign immunity and provides the Court of Federal Claims with jurisdiction under the Tucker Act.

A.      **Tax-Refund Claim**

1.      **Jurisdiction**

Although the United States has waived its sovereign immunity for some tax disputes, there are three requirements that a plaintiff must meet for the Court of Federal Claims to have subject-matter jurisdiction over a tax-refund suit under the Tucker Act.

First, a plaintiff must have fully paid any tax deficiencies.  *See Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993).  The plaintiff alleges that she does not owe any federal taxes (Compl. at 8), and the defendant does not challenge that allegation in its motion to dismiss. (Mot. to Dismiss at 12.)  The plaintiff has plausibly alleged that she meets the first requirement for jurisdiction.

Second, a plaintiff must have filed a timely tax-refund claim with the IRS.  Section 7422(a) of the Internal Revenue Code waives sovereign immunity only when a taxpayer has filed a qualifying tax-refund claim with the IRS.  26 U.S.C. § 7422(a); *see Chi. Milwaukee Corp. v. United States*, 40 F.3d 373, 374-75 (Fed. Cir. 1994).

The plaintiff has not met her burden of demonstrating compliance with this jurisdictional prerequisite.  Although it is not entirely clear from the face of the complaint, the Court assumes that the plaintiff is seeking payment of economic stimulus payments and child tax credits for tax years 2020 and 2021.  Although the plaintiff characterizes these credits as distinct from a tax refund, the only way she can obtain this money is by filing for a tax return with the IRS.  *See* 26 U.S.C. § 6428(g)(2) ("No refund shall be payable . . . to an eligible individual who does not include on the return of tax for the taxable year . . . such individual's valid identification number . . . .").

In her complaint, the plaintiff alleges that although she has paid federal taxes in prior years, she is now a "non filer" and has been at least since 2020.  (Compl. at 8.)  The plaintiff asserted in her opposition to the defendant's motion that her "request for her rightfully owed money . . . is in no way, shape form or fashion a tax refund."  (Pl.'s Resp. at 2.)  This assertion also suggests that she has not filed a claim for a tax refund.  At the time that the plaintiff filed suit on December 15, 2021, the plaintiff could not have filed her tax return for the year 2021 yet; it is therefore impossible that the plaintiff had filed an administrative refund claim with the IRS for the year 2021.

Although the plaintiff argues in her response that she has submitted various complaints to the IRS, she has submitted no evidence that she ever sought a tax refund through the required process or otherwise submitted her claim to the IRS.  The plaintiff, even proceeding *pro se*, has the burden of proving that the Court has jurisdiction over her claims.  *See Kelley*, 812 F.2d at 1380.  It is not enough to assert that she has submitted some informal, administrative requests to the IRS.  The plaintiff must demonstrate that she has filed a tax return or formal request for a

refund of taxes. In the absence of such documentation, the Court lacks jurisdiction over her claim. The plaintiff has not met her burden.[4]

Third, a plaintiff must wait at least six months after filing a refund claim with the IRS before filing suit with the Court of Federal Claims. 26 U.S.C. § 6532(a)(1). The plaintiff has not alleged that she filed a tax return with the IRS and, for that reason, has also not met this requirement.

Under precedents from the Supreme Court and the Federal Circuit, a plaintiff's failure to meet these three requirements deprives the Court of Federal Claims of subject-matter jurisdiction under RCFC 12(b)(1). *See Dalm v. United States*, 494 U.S. 596, 608-10 (1990) (holding that a taxpayer's failure to file a timely tax return under 26 U.S.C. § 7422(a) deprived the district court of jurisdiction over the taxpayer's claim for a tax refund).

A recent case from the Federal Circuit discussed aspects of 26 U.S.C. § 7422(a) that were not jurisdictional. *Brown v. United States*, 22 F.4th 1008, 1012 (Fed. Cir. 2022). When a taxpayer had not met signature and verification requirements in Treasury regulations promulgated under the authority of 26 U.S.C. § 7422(a), the Federal Circuit found subject-matter jurisdiction under RCFC 12(b)(1) but upheld dismissal of the taxpayer's claims under RCFC 12(b)(6). The Federal Circuit nonetheless distinguished *Dalm* because "the adequacy of the filing . . . is different from the fact of filing." *Id.* at 1011. *Brown* therefore is not in conflict with the holding of *Dalm* that a court lacks subject-matter jurisdiction over a plaintiff's claim for a tax refund when the plaintiff has not filed a tax return.

## 2.      Stating a Claim

In the alternative, even if the Court had jurisdiction over the plaintiff's claim for a tax refund, the plaintiff has not stated a claim upon which relief can be granted for the same reasons that jurisdiction does not exist. The plaintiff has not demonstrated that she has complied with procedures mandated by statute. She has failed to allege that she filed a tax return with the IRS and waited an adequate amount of time for the IRS to respond. She therefore has not alleged facts that would plausibly entitle her to relief. *See Twombly*, 550 U.S. at 557.

Additionally, Congress has imposed statutory deadlines for economic stimulus payments and advance child tax credit payments. The first economic stimulus payment cannot be

---

[4] If the plaintiff did file timely tax-refund claims with the IRS seeking her advance credits, the plaintiff may seek reconsideration of this order under RCFC 59 or RCFC 60. If the plaintiff does seek reconsideration, she must attach to her motion the forms she submitted to the IRS seeking her refunds and the information required by RCFC 9(m)(2). RCFC 9(m)(2) requires the plaintiff to include a copy of the claim for a refund and a statement identifying the tax year or tax years for which the plaintiff seeks a refund; the amount, date, and place of each payment to be refunded; the date and place the return was filed; and the name, address, and identification number of the taxpayer appearing on the return.

distributed after December 31, 2020, unless the taxpayer files a tax return for the year 2020. 26 U.S.C. §§ 6428(f)(3)(A), 6428(f)(3)(B).  The second economic stimulus payment has a deadline of January 15, 2021, after which date a taxpayer must file a return to receive any portion of the payment still owing.  *Id.* §§ 6428A(f)(3)(A), 6428A(f)(3)(B).  The third and final economic stimulus payment and advanced child tax credit had to be paid by December 31, 2021, but a taxpayer may still receive that payment by filing a tax return for the year 2021.  *Id.* §§ 6428B(g)(3), 7527A(a).  The plaintiff has until April 18, 2022, to file her tax return for the year 2021.[5]  If she requests an extension, the plaintiff may file her tax return for the year 2021 at any time until October 7, 2022.  The law therefore does not currently entitle the plaintiff to a remedy.  *See Lindsay*, 295 F.3d at 1257.

In setting up the program for economic stimulus payments and child tax credits, Congress used the already-established administrative structure and procedures of the IRS.  Congress further required strict compliance with those procedures to facilitate relatively quick payments to a large number of individuals.  The plaintiff is correct that the economic stimulus payments and child tax credits are different from a typical tax refund, but in creating those credits, Congress used the pre-existing rules for tax refunds.  It is not enough that the plaintiff has alerted the IRS to issues regarding her tax credits.  She must demonstrate that she has followed the exact steps mandated by Congress and employed by the IRS before the Court can exercise jurisdiction over her claim.

In other words, although the money the plaintiff seeks is different from a typical tax refund, she must follow the laws regarding tax-refund claims before filing suit in this Court.  The law requires her to file a tax return to get the money she seeks.

In sum, the Court must dismiss the plaintiff's claim for a tax refund under RCFC 12(b)(1) and 12(b)(6).  The plaintiff must first file a tax-refund claim with the IRS.  She then must wait at least six months after filing her claim before filing suit in this court.  Because the plaintiff has not established that she followed these procedures, the Court lacks subject-matter jurisdiction over the plaintiff's claim.  The plaintiff also has not stated a claim upon which relief can be granted.

### B.    Takings Claim

The plaintiff "seeks just compensation from the United States for property taken from the Plaintiff by the Defendant . . . ."  (Compl. at 1.)  The plaintiff clarified in her response that "the complaint is in regards to unlawful taking . . . ."  (Pl.'s Resp. at 2.)

---

[5] The IRS provides deadlines and guidance on receiving economic stimulus payments and child tax credits at the following web page: https://www.irs.gov/newsroom/2022-tax-filing-season-begins-jan-24-irs-outlines-refund-timing-and-what-to-expect-in-advance-of-april-18-tax-deadline (last visited April 11, 2022).

The takings clause of the fifth amendment of the U.S. Constitution provides, "nor shall private property be taken for public use, without just compensation." The Court of Federal Claims has jurisdiction over claims arising under the takings clause. *See Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

Under RCFC 9(i), "[i]n pleading a claim for just compensation under the Fifth Amendment of the United States Constitution, a party must identify the specific property interest alleged to have been taken by the United States." The plaintiff has not specified a constitutionally cognizable property interest that the United States has taken.

The plaintiff argues that the IRS owes her money for the economic stimulus and child tax credits, but these payments cannot form the subject of an alleged taking. If a right to receive money originates in statute, that right cannot serve as a property interest under the fifth amendment because "no one is considered to have a property interest in a rule of law." *Branch v. United States*, 69 F.3d 1571, 1577-78 (Fed. Cir. 1995). A statutory right to be paid money cannot serve as a property interest under the takings clause. *Adams v. United States*, 391 F.3d 1212, 1225 (Fed. Cir. 2004).

The plaintiff's right to receive economic stimulus payments and the child tax credit originates entirely in the Internal Revenue Code. 26 U.S.C. §§ 6428(a), 6428A(a), 6428B(a), 24(i). Accordingly, the plaintiff's right to receive these tax credits cannot serve as the basis for a claim under the takings clause. Under RCFC 12(b)(6), the plaintiff has not stated a claim upon which relief can be granted. The plaintiff's takings claim must therefore be dismissed with prejudice.

## C.     Other Constitutional Claims

The plaintiff alleges that the United States has violated the first, fourth, fifth, sixth, eighth, ninth, and fourteenth amendments of the U.S. Constitution. (Compl. at 3, 12.) The plaintiff cites various provisions of those amendments, but none of the provisions she cites is a money-mandating source of law. The governing principle is that "except for the taking clause of the fifth amendment, the other amendments [to the Constitution] do not require the United States to pay money for their alleged violation," and therefore they do not constitute money-mandating sources of law under which the Court of Federal Claims may entertain claims. *Elkins v. United States*, 229 Ct. Cl. 607, 608 (1981) (per curiam).

The plaintiff cites the right to free speech and peaceful assembly in the first amendment. (Compl. at 12.) The first amendment "does not mandate the payment of damages for its breach and cannot be construed as a money-mandating source." *Russell v. United States*, 78 Fed. Cl. 281, 288 (2007) (citing *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983), *cert. denied*, 465 U.S. 1065 (1984)).

The plaintiff does not specify which part of the fourth amendment she claims the United States violated. Regardless, the fourth amendment does not provide a right to money damages for its breach and provides no basis for Tucker Act jurisdiction. *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997).

The plaintiff also relies on the due process clause of the fifth amendment.  (Compl. at 12.)  Because "the due process clause does not obligate the government to pay money damages," *Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995), this claim too is beyond the jurisdiction of the Court of Federal Claims.

The plaintiff does not specify which part of the sixth amendment she claims that the government violated or how the government violated it.  In any case, the sixth amendment also is not money-mandating.  *Drake v. United States*, 792 F. App'x 916, 920 (Fed. Cir. 2019).

The plaintiff cites the eighth amendment's prohibition on cruel and unusual punishment.  (Compl. at 12.)  The Federal Circuit has held that the "Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'" *Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (*quoting Edelmann v. United States*, 76 Fed. Cl. 376, 383 (2007)).

The plaintiff also relies on the ninth amendment to support her claim (Compl. at 12), but the text of that amendment cannot be read to mandate the payment of money for a violation of the provision.  *See Russell*, 78 Fed. Cl. at 288.

Finally, the plaintiff quotes both the due process and the equal protection clauses of the fourteenth amendment.  (Compl. at 12.)  Neither of these clauses is money-mandating.  *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

Aside from the takings-clause claim rejected above, the plaintiff has not alleged that the United States violated any money-mandating portion of the U.S. Constitution.  For the Court of Federal Claims to have subject-matter jurisdiction, the claim must arise under a money-mandating source of substantive law.  *See Fisher*, 402 F.3d at 1172.  The plaintiff has failed to point to any such law to support her claims.  Accordingly, the Court lacks subject-matter jurisdiction over the plaintiff's remaining constitutional claims.

### D.    Other Statutory Claims

The plaintiff also argues that the government has violated provisions of the Civil Rights Act, the Federal Tort Claims Act, and the U.S. criminal code.  (Compl. at 12-14.)

The Court does not have jurisdiction to hear claims for violations of the various federal civil rights laws.  "Only federal district courts have jurisdiction to hear claims alleging civil rights violations." *Cato v. United States*, 141 Fed. Cl. 140, 143 (2018).

The Court also lacks jurisdiction to hear claims for a tort.  The Tucker Act limits the jurisdiction of the Court of Federal Claims to "cases *not* sounding in tort."  28 U.S.C. § 1491(a)(1) (emphasis added).  Precedent from the Federal Circuit also prohibits the Court of Federal Claims from hearing claims arising under the Federal Tort Claims Act.  *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993).

Additionally, the Court lacks subject-matter jurisdiction to hear claims of criminal misconduct.  *See Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994).  The Court of

Federal Claims therefore cannot entertain the plaintiff's claims alleging violations of federal criminal laws.

The plaintiff may not seek the special procedures she requests for consideration of her claims.  The plaintiff has requested a three-judge panel and a jury trial.  (Compl. at 1.)  A three-judge panel is available only in federal district court and only under limited circumstances.  *See* 28 U.S.C. § 2284.  In addition, jury trials are never available at the Court of Federal Claims.  *See Rohland v. United States*, 135 Fed. Cl. 36, 38 (2017).

Finally, the plaintiff also seeks, in addition to monetary damages, injunctive and declaratory relief.  (Compl. at 14.)  The Court of Federal Claims "does not have the general equitable powers of a district court to grant prospective relief," including injunctions.  *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988).  Injunctions in tax disputes are also generally not allowed unless an exception applies.  *See* 26 U.S.C. § 7421(a).  An exception does not apply in this case.

In sum, the Court does not have subject-matter jurisdiction over any of the plaintiff's remaining statutory claims.  The Court does not have jurisdiction over the plaintiff's tax-refund claim because the plaintiff has not filed a refund claim with the IRS, and the plaintiff has not pointed to another money-mandating source of substantive law that would confer jurisdiction on the Court.  The Court has jurisdiction over the plaintiff's takings claim, but the plaintiff has not stated a takings claim upon which relief can be granted.  None of the other constitutional and statutory provisions cited by the plaintiff fall under the Court's limited subject-matter jurisdiction.

### E.    Transfer

When a court lacks subject-matter jurisdiction, the court shall transfer the complaint to another court with jurisdiction "if it is in the interest of justice."  28 U.S.C. § 1631.  If no court has jurisdiction because a claim is untimely, transfer is inappropriate.  *See Weston v. United States*, 156 Fed. Cl. 9, 13 (2021), *appeal docketed*, No. 22-1179 (Fed. Cir. Nov. 23, 2021).

As previously explained, the plaintiff has not alleged that she pursued the necessary predicate procedures with the IRS.  *See* 26 U.S.C. §§ 7422(a), 6532(a)(1).  No court will currently have jurisdiction over her tax-refund claim.  Transfer of the plaintiff's tax-refund claim is therefore inappropriate.

Furthermore, a court may transfer a case only if it is "in the interest of justice."  28 U.S.C. § 1631.  "The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits."  *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987).  Frivolous claims include those that are "clearly baseless," "fanciful," "fantastic," and "delusional."  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

The plaintiff's remaining constitutional and statutory claims are frivolous.  They lack factual basis and any factual allegations whatsoever.  Accordingly, it is not "in the interest of justice" to transfer the plaintiff's other claims.  28 U.S.C. § 1631.

## IV.   CONCLUSION

The Court does not have subject-matter jurisdiction over any of the plaintiff's claims other than the takings-clause claim.  The plaintiff's takings-clause claim fails to state a claim upon which relief can be granted.  The defendant's motion to dismiss is **GRANTED**.  The plaintiff's claims for a tax refund and a taking are **DISMISSED** with prejudice.  The plaintiff's remaining claims are **DISMISSED** without prejudice.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.  No costs are awarded.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

12